Common Pleas Court of Hamilton County.

WALTER ROWE *v.* PUBLIC FINANCE CO.

(Decided December 10, 1929.)

*John W. Cowell,* for the plaintiff.

*H. Henry Sundermann* and *Maxwell & Ramsey,* for defendants.

RYAN, J.

Submitted on the following agreed statement of facts.

"It is hereby agreed by and between the parties hereto that the facts in the above styled case are as follows:

"That the plaintiff, Walter Rowe, on or about the 12th day of December 1927, borrowed from the defendant, The Public Finance Company, the sum of Four Hundred ($400.00) Dollars; that at this time he executed a wage assignment which was also signed by Elizabeth Rowe, his wife, which was delivered to the said defendant as security for said loan. That a copy of said wage assignment is as follows:

'December 12, 1927.

For and in consideration of a loan in the amount of $400.00, with charges (including interest) at 3 per cent per month from date on the unpaid balance of the amount loaned, made by Public Finance Company, to assignor and the execution of this assignment simultaneously with the making of said loan, I, we, or either of us, hereby assign, transfer and set over to said assignee, 50 per cent of any salary, wages and earnings which may be or become due me or either of us under any present or future contract of employment from any person, firm or corporation until the full sum of said loan, together with charges thereon is fully paid, as provided in Section 6346-1 to 10

inclusive, General Code of Ohio. As an agent of the assignee, I, we, or either of us, further agree to collect (without charges), said salary, wages and earnings when due, for the sole use and benefit of said assignee, provided and on condition that I, we, or either of us pay the amount specified herein to said assignee on or before one day after the same is received by either of us. Upon failure on our part to so pay over said amount to said assignee, authority to collect said salary, wages or earnings as such agent shall thereupon be revoked and said assignee shall have the sole right to collect said salary, wages or earnings.'

Signed in our presence.⎰ Walter Rowe,
   Bernie C. Hegener,⎰ Elizabeth Rowe (wife)

that on the 11th day of December, 1928, the balance due on said loan was Three Hundred and Twenty-seven and 5/100 ($327.05) Dollars; that on January 15th, 1929, this plaintiff was duly adjudicated a bankrupt in the District Court of the United States for the Southern District of Ohio, being Bankruptcy case No. 7528; that on the 31st day of May, 1929, his petition for discharge was filed and said petition is now pending; that one of the liabilities listed in his schedule filed in said bankruptcy proceedings was the loan of this defendant, The Public Finance Company, in the said sum of Three Hundred Twenty-seven and 5/100 ($327.05) Dollars, but not setting forth that said loan was secured by a wage assignment.

"That the plaintiff was on December 12th, 1927 in the employ of The Pennsylvania Railroad Company; and has continued in their employ and is still employed by said Pennsylvania Railroad Company the other defendant herein; that on or about the 10th day of October, 1929, the defendant, The Public Finance Company, filed said wage assignment with the other defendant herein, The Pennsylvania Railroad Company, by whom this plaintiff is and was employed; that by virtue of the filing of this wage assignment said defendant, The Pennsylvania Railroad Company, will withhold fifty (50%) percent of this plaintiff's earnings until the sum of Three Hundred Twenty-seven and 5/100 ($327.05) Dollars is paid, unless otherwise ordered by this court; that all monies which the said The Pennsylvania Railroad Company are holding or may in the future hold by reason of said assignment of earnings are monies which have been or will be earned by this plaintiff after his adjudication in bankruptcy as above stated.

"The above facts are to be taken by the court as true in the place of any evidence."

The sole question presented here is whether an assignment of wages to be earned in an existing employment, given before bankruptcy and without fraud, and upon sufficient consideration to secure a debt contracted simultaneously with the execution of said assignment, can be enforced after the adjudication and discharge in bankruptcy of the assignor as to wages earned in the course of the original employment by the creditor whose claim has been listed by the bankrupt, but which claim has not been proved by the creditor in the bankruptcy proceeding.

*Section* 6346-7, *General Code of Ohio,* provides:

"No assignment of any salary, wages or earnings, or any part thereof, given to secure a loan shall be valid unless the same shall be in writing, signed in person by the person making the same; and if such person is married and living with husband or wife, signed also by husband or wife of such person, as the case may be, *nor shall any such assignment be valid unless same shall be in writing and made to secure a debt contracted simultaneously with the execution of such assignment,* with all blank spaces therein filled in ink or typewriting, together with the date, names of assignor and assignee, the amount for which such assignment is made, together with the rate of interest charged.

"The term assignment as used in this section shall include every instrument purporting to transfer an interest in or any authority to collect the wages, salary or earnings of such person. Any assignment of wages, salary or earnings, made in accordance with the provisions of this section *shall bind the wages, salary or earnings earned or to be earned by the assignor until the loan secured by such assignment and interest thereon is fully paid,* but no assignment or conveyance of wages, salary or earnings to be earned in the future given to secure a loan shall be binding for a sum in excess of 50% of the amount due or to become due the person making such assignment * * *."

In *Remington on Bankruptcy,* Vol. 1, Section 537, the authority lays down the rule as follows:

"Where, by the state law, an assignment of a con-

tract to be performed by the assignor in the future will pass future accruals thereunder as of the date of the original assignment, undoubtedly the future accruals resulting from the continued performance of the contract will pass to the assignee thereof, and the assignor's trustee in bankruptcy will take no title thereto, except, of course, in so far as the original assignment might or might not itself be defeasible as being a preference or a fraudulent transfer, etc., at the time it was made.

"An interesting example arises in cases of assignments of wages to be earned in the future under a contract of employment existing at the time of the bankruptcy. Two questions are involved in such cases: First, is the assignment void as to the trustee in bankruptcy? Second, is it discharged as to the bankrupt himself? The assignment certainly is not void as to the trustee, for the contract of employment, being a contract for personal services would not be an asset of the estate as to future earnings thereunder even if not previously assigned. It is not dischargeable as to the bankrupt, because at the time of the bankruptcy it was merely a contract and not a debt (discharge barring 'probable debts' and 'debts' only); nor is it a contract that had become, by virtue of the bankruptcy itself, merged in a provable debt. This is so, obviously, because, at the time of the bankruptcy, suit could not have been brought thereon, nor by virtue of the bankruptcy did the assignor become incapable of carrying out his contract. In fact the hypothesis itself is that he did in fact continue to carry it out after the bankruptcy."

In the case of the *Citizen's Loan Association* v. *Boston & Maine R. R.*, 196 Mass., 528, also 14 L. R. A., 1025, the Court said:

"The single question presented by this appeal is whether an assignment of wages to be earned in an existing employment, given before bankruptcy, without fraud, and upon sufficient consideration, to secure a valid subsisting debt, and duly recorded, can be enforced, after the discharge in bankruptcy of the assignor, as to wages earned in the course of the original employment, by the creditor, who has not proved his debt in bankruptcy. The remedy upon the debt, and the legal, but not the moral, obligation to pay is at an end. The obligation itself is not cancelled * * *. An assignment of future earnings, which may accrue under an existing employment, is a valid contract and creates rights, which may be enforced both at law and

in equity, whichever may in a particular case be the appropriate forum  *  *  *  These cases proceed upon the theory that the worker under contract for service, though indefinite as to time, and compensation and terminable at will, has an actual and real interest in wages to be earned in the future by virtue of his contract.  He may recover for an unjustifiable interference with such an employment as for an injury to any other vested property right * * * It is plain that one may sell wool to be grown upon his own sheep, or a crop to be produced upon his own land, but not to be grown or produced upon the sheep or land of another.  No more can one assign wages, where there is no contract for service  *  *  *.  But profitable employment is a reality.  Wages to be earned by virtue of an existing employment are no more shadowy or unsubstantial than the fleecé of next spring or the crop of the following autumn.  Money to accrue from such service is not a bare expectancy or mere possibility but a substance capable of grasp and delivery.  It constitutes a present, existing, right of property, which may be sold or assigned as any other property.  Although not in the manual possession of the assignor, it is his potential possession.  The transfer of this potential possession, creates the assignee a lienor upon the property right.  The holder of such an assignment stands upon a firmer plane than the mortgagee of future acquired property, who has only the right by contract to act betimes in the future for his protection * * *. The assignee of wages to be earned under an existing contract gets a present right, perfect in itself, requiring no future action on his part  *  *  *.  It may be taken for granted that the right to future wages to be earned under such a contract does not pass to the trustee in bankruptcy. *·  *  *.  It is possible that an agreement to execute an assignment, falling short of the creation of a lien, is, when the wages have been actually earned, enforceable in equity, even after a subsequent bankruptcy or insolvency.  We do not decide this, however,  *  *  *.  At lowest the assignment in question became 'a specific equitable lien on the fund' or was 'an independent collateral agreement given by way of guaranty or other security' for the main debt, and there is no reason why such an agreement should not outlive the remedy upon the debt, to secure which it was given.  In either event it was not dissolved by the bankruptcy."

In case No. 9218, Court of Appeals of Cuyahoga County, entitled *The Co-operative & Industrial Finance Company*

v. *Adam Reed, et al,* while no written opinion was delivered by the Court, the ruling in the case of *The Citizens Loan Association* v. *Boston & Maine R. R. Company,* was followed, and this Court is of the opinion that said case states the law applicable to the instant case.

Wherefore, a decree will be entered finding that the assignment of plaintiff's wages to the defendant will pass future accruals of wages to the assignee in accordance with the terms of the assignment.

Common Pleas Court of Crawford County.

THE STATE OF OHIO, EX REL. THE CITY OF BUCYRUS, V. IVAN B. SMITH, COUNTY TREASURER.

(Decided December 19, 1929.)

*Charles F. Schaber,* for relator.
*J. D. Sears,* for defendant.

WRIGHT (J., WALTER), J.

This is an action in mandamus by the solicitor of the city of Bucyrus, against the county treasurer.

The petition recites in substance that a large number and amount of special assessments for various improvements have been levied against real estate in the city of Bucyrus and have been certified according to law to the county treasurer to be collected as other taxes; that it is the duty of the county treasurer to collect said assessments at the same time and manner as other taxes are collected; that it has been the custom and habit of the county treasurer to accept general taxes on land against which special